STATE v. EDWARD MINTON.

(Filed 25 February, 1948.)

**1. Criminal Law § 52a—**

Circumstantial evidence is insufficient to sustain a conviction unless the circumstantial facts shown on the hearing are of such a nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable hypothesis.

**2. Criminal Law § 31d—**

The fact that finger-prints corresponding to those of an accused are found in a place where a crime was committed is without probative force unless the circumstances are such that the finger-prints could have been impressed only at the time the crime was perpetrated.

**3. Criminal Law § 52a—Circumstantial evidence as to identity of defendant as perpetrator of crime held insufficient to be submitted to jury.**

Defendant was charged with breaking and entering, larceny and receiving. The State's evidence tended to show that the glass in the entrance door of a lunchroom was broken and the place entered during the night, and two 25c pieces taken from the cash drawer, that defendant had been a patron of the shop on the night of the crime until it was closed and that he was one of some ten or eleven persons who were standing around the front of the shop when the proprietor locked the door in closing for the night, that a thumb print corresponding to defendant's was found on a part of the broken glass which had been on the outside of the door about 15 inches from the knob, that blood was found on several pieces of glass, that two 25c pieces were found in defendant's possession, and that defendant had one or more little cut places, which appeared to be fresh, in the palm of his hand. The State introduced evidence that defendant stated he had cut his hand with a razor a short time prior to his apprehension. *Held:* The circumstantial evidence was insufficient to be submitted to the jury, and defendant's motion to nonsuit is allowed in the Supreme Court on appeal. G. S., 15-173.

APPEAL by defendant from *Williams, J.,* at September Term, 1947, of EDGECOMBE.

The defendant, Edward Minton, was tried upon a three-count bill of indictment charging him with perpetrating these offenses on 26 January, 1946: (1) Breaking and entering the shop of the Coastal Lunch in Tarboro with intent to commit larceny therein contrary to G. S., 14-54; (2) Larceny of "two twenty-five cents pieces of the value of fifty cents" of the moneys of the Coastal Lunch; and (3) Receiving "two twenty-five cents pieces of the value of fifty cents" of the moneys of the Coastal Lunch with knowledge that the same had theretofore been feloniously stolen by another.

In its effort to sustain the charges against the accused, the State was compelled to rely entirely upon the circumstances set out below.

At the time named in the indictment, the State's witness Braddy was engaged in the retail sale of beer, sandwiches, and other articles at a shop known as the Coastal Lunch on North Main Street in Tarboro. Persons resorting to the Coastal Lunch for the purpose of trade entered the shop through a front door which was "half glass and wood with the glass panel at the top and the wood at the bottom." The defendant visited the Coastal Lunch during business hours on the night in question for the lawful object of buying beer. He consumed "four or five beers" on the premises and tarried in the shop with other customers until closing time. Braddy shut the Coastal Lunch about eleven-thirty o'clock on the night in question and departed from the premises some twenty minutes later after securely locking the front door. At that time the accused and some nine or ten other persons were standing upon the sidewalk or street in front of the Coastal Lunch. Two twenty-five cent coins were left in the cash drawer in the shop.

At seven o'clock on the following morning, it was discovered that the glass in the upper portion of the front door had been broken out, and that shattered glass was scattered over the floor of the shop. Blood was seen upon the jagged edge of a piece of broken glass sticking in the molding at the lower right-hand corner of the upper half of the door. Several finger-prints were observed upon a piece of glass lying upon the floor of the shop. This piece of glass was submitted to a finger-print expert for examination. The only legible finger-print thereon corresponded with the print of the left thumb of the defendant. It was determined by fitting pieces of broken glass together that this legible print had originally appeared upon the outside surface of the glass about fifteen inches from the door knob, which was located on the right side of the door. The accused is right-handed. There was "no way of knowing what time or when that fingerprint was put on the glass" or "whose the other fingerprints were because they had been smeared." An inspection of the cash drawer in the shop disclosed that the two twenty-five cent pieces were missing.

A short time later police officers went to the home of the defendant situated several blocks from the Coastal Lunch. They found him in bed asleep, waked him, and accused him of having broken and entered the Coastal Lunch. The defendant immediately denied his guilt in the premises, stating that he had been a customer at the Coastal Lunch on the previous night, that he had returned to his home about midnight, and that he had been at home ever since. The officers observed one or more little cut places that "looked to be fresh cuts" in the palm of the defendant's right hand, and found "two quarters . . ., an English penny, a pack of smokes and a pack of gum" on the dresser in the defendant's bedroom. In response to questions asked by the officers, the accused

stated that he had cut his right hand with a razor blade a short time before while making billfolds out of leather and that he had earned the money on the dresser by selling billfolds made by him.

The State also offered testimony tending to show that at some undisclosed time in the past the defendant had unlawfully broken and entered "the White Cigar store" and stolen money therefrom. This evidence was admitted over the objection and exception of the defendant, who did not testify on the trial below.

Testimony was presented in behalf of the accused indicating that he was at home asleep when the breaking and entering of the Coastal Lunch occurred and when the coins were removed therefrom. The disposition of this appeal in this Court renders it unnecessary to set out this evidence or to consider and determine whether the trial judge erred in admitting the testimony of the State tending to show that the defendant had committed a crime in the past similar in nature to the offenses charged in the present indictment.

The jury returned a general verdict of guilty. From sentence pronounced upon such verdict, the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Cameron S. Weeks for defendant, appellant.*

ERVIN, J. The defendant places his chief emphasis in this Court upon his exceptions to the refusal of the trial court to grant his motion for judgment of nonsuit made when the State rested its case and renewed after all the evidence was concluded.

The State relies entirely upon circumstantial evidence. It is an established principle in the administration of criminal law that circumstantial evidence is insufficient to sustain a conviction unless the circumstantial facts shown on the hearing are "of such a nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable hypothesis." *S. v. Harvey, ante,* 62, 44 S. E. (2d), 472. See, also, in this connection: *S. v. Coffey, ante,* 119, 44 S. E. (2d), 886; *S. v. Madden,* 212 N. C., 56, 192 S. E., 859.

It is undoubtedly proper to contend that the circumstances adduced by the State in the case at bar give rise to a strong suspicion that the accused is guilty of one or more of the offenses set out in the indictment. Yet, it cannot be gainsaid that these circumstances are quite compatible with a reasonable conclusion that the defendant is wholly innocent.

It is to be noted that there is not a syllable of testimony in the record indicating that the quarters lying upon the dresser in the bedroom of the accused were the twenty-five cent pieces removed from the cash drawer

in the Coastal Lunch. Any contention to that effect is merely conjectural.

The testimony that the print of the left thumb of the defendant appeared upon the outside surface of a piece of glass which originally occupied a position near the knob of the front door of the Coastal Lunch has no legitimate tendency to show that he was present when the shop was broken and entered and the coins were taken therefrom. The fact that finger-prints corresponding to those of an accused are found in a place where a crime was committed is without probative force unless the circumstances are such that the finger-prints could have been impressed only at the time when the crime was perpetrated. 20 Am. Jur., Evidence, section 358; 16 A. L. R., Annotation, 370; 63 A. L. R., Annotation, 1324. The thumb print of the defendant was found in a public place. There were finger-prints upon the same piece of glass other than that identified as the defendant's. The finger-print expert called to the stand by the State testified that there was "no way of knowing" when the defendant's thumb print was impressed upon the glass near the door knob, or "whose the other finger-prints were." There is not a scintilla of evidence to negative the reasonable assumption that the left thumb print of the accused was put upon the glass when he entered the shop during business hours on the night in question for the lawful purpose of buying beer in response to the implied invitation extended to the public by the operator of the Coastal Lunch.

The circumstances that the sharp edge of a piece of broken glass sticking in the molding of the door of the shop was bloody and that the defendant had one or more little cut places "that looked like fresh cuts" in the palm of his right hand are as consistent with innocence as they are with guilt upon the record here. The State itself offered in evidence the reasonable explanation of the accused that he had cut his hand with a razor blade while engaged in making billfolds out of leather.

The testimony offered by the State over the defendant's objection and exception to the effect that at some time in the past the defendant had committed a crime similar in nature to those set out in the indictment had no tendency to establish the defendant's guilt in the case at bar. Nothing was shown justifying any inference that the former crime of the defendant and the offenses now charged against him were necessarily committed by the same person.

The circumstances relied on by the State are inconclusive and do not lead to a satisfactory deduction that the accused, and no one else, perpetrated the crimes alleged in this action. All of these circumstances can be true, and the defendant can still be innocent. Consequently, the trial court erred in refusing to dismiss the action. The defendant's motion

for judgment of nonsuit is sustained on this appeal in conformity to
G. S., 15-173.

Reversed.