STATE OF NORTH CAROLINA v. TROY ANTHONY WHITE, Defendant-Appellant

No. COA98-990

(Filed 20 July 1999)

### 1. Criminal Law— subject matter jurisdiction—failure to instruct jury

The trial court did not err in a heroin trafficking prosecution by not instructing the jury on subject-matter jurisdiction where the State's evidence tended to show that defendant became involved in drug dealing between New York City and Durham and was arrested in New York in possession of heroin. While defendant contended that the only drugs admitted into evidence were those in his possession when he was arrested in New York, the only crimes with which defendant was charged indisputably took place in North Carolina, the primary evidence against defendant was an accomplice's testimony, and defendant's possession of drugs in New York was introduced to corroborate the accomplice's testimony.

### 2. Constitutional Law— double jeopardy—heroin trafficking—prior conviction in federal court—not raised at trial

A heroin trafficking defendant's contention that prosecution in North Carolina following a federal conviction constituted double jeopardy was waived where not raised in the trial court.

Appeal by defendant Troy Anthony White from judgment entered 23 October 1997 by Judge Robert L. Farmer, in Superior Court, Wake County. Heard in the Court of Appeals 18 May 1999.

*Michael F. Easley, Attorney General, by W. Dale Talbert, Special Deputy Attorney General, for the State.*

*Manning & Crouch, by James A. Crouch, for defendant-appellant.*

WYNN, Judge.

Defendant Troy Anthony White appeals his convictions for trafficking in heroin by possession, transportation and manufacture of 28 grams or more of heroin. We find no error in either his trial or the sentence awarded to him.

**STATE v. WHITE**

[134 N.C. App. 338 (1999)]

At trial, the State's evidence tended to show that in 1991 White met Roberto Arroyo while working as a contractor in New York. At some point thereafter, the two men discussed and eventually entered the drug-dealing business. On at least four occasions, Arroyo supplied White with at least four hundred grams of heroin. Although these deliveries were made in New York, White told Arroyo that he was selling the drugs in North Carolina.

In August 1993, Derrick Johnson, an acquaintance of White, moved to North Carolina and began working for him in the drug-dealing business. Johnson testified that on numerous occasions he was involved in a cutting and bagging operation led by White. Further, he stated that each cutting and bagging session yielded over eight-thousand bags of heroin, each containing about one sixteenth of a gram. Johnson also testified that he was involved in the distribution end of the drug-dealing business. Specifically, he stated that he would sell the drugs in Durham, North Carolina on Reservoir Street, and in or around a house located on Primitive Street—both areas known for the high number of heroin sales that have taken place there.

After an extensive investigation into White's activities, New York authorities, working in conjunction with North Carolina authorities, arrested White in New York while he was in possession of 365.7 grams of heroin. Thereafter, White was charged and tried for the aforementioned crimes in North Carolina.

Prior to and during trial, White moved to dismiss the charges for lack of subject matter jurisdiction contending that the State failed to produce sufficient evidence showing that he committed the crimes within the territorial boundaries of North Carolina. The trial court denied these motions. Further, the trial court denied White's request to instruct the jury on lack of subject matter jurisdiction. Following his conviction on all counts. This appeal ensued.

---

[1] On appeal, White first argues that the trial court erred in failing to instruct the jury on lack of subject-matter jurisdiction. We disagree.

It is well settled law that an act must have occurred within the territorial boundaries of the state to be punishable as a crime in this state. *State v. Jones*, 227 N.C. 94, 96, 40 S.E.2d 700, 701 (1946). Accordingly, North Carolina courts have jurisdiction over a crime if any of the essential acts forming the offense occurred in this

State. *See State v. Vines*, 317 N.C. 242, 250-51, 345 S.E.2d 169, 174 (1986).

When a defendant moves to challenge the State's jurisdiction over a particular crime, the burden is placed upon the State to prove beyond a reasonable doubt that the crime occurred in North Carolina. *See State v. Rick*, 342 N.C. 91, 99, 463 S.E.2d 182, 186 (1995). Further, in those cases where jurisdiction is contested, if "the trial court makes a preliminary determination that sufficient evidence exists upon which a jury could conclude beyond a reasonable doubt that the [crime] occurred in North Carolina, the trial court must instruct the jury that unless the State has satisfied it beyond a reasonable doubt that the [crime] occurred in North Carolina, a verdict of not guilty should be returned". *Id.* at 100-01, 463 S.E.2d at 187. Moreover, the jury should also be instructed that if it is not so satisfied, it must return a special verdict indicating lack of jurisdiction. *See State v. Batdorf*, 293 N.C. 486, 497, 238 S.E.2d 497, 504 (1977). However, when the facts upon which the court finds jurisdiction are not in dispute, a jury instruction regarding jurisdiction is not warranted. *See State v. Callahan*, 77 N.C. App. 164, 169, 334 S.E.2d 424 (1985).

In the case *sub judice*, White contends that North Carolina did not have jurisdiction over this crime because there was insufficient evidence that he trafficked heroin in this State. In support of this argument, White notes that the only drugs that were admitted into evidence were those found in his possession when he was arrested in New York. This argument is misplaced.

First, the confiscated drugs introduced into evidence were not used as part of the State's substantive evidence. Significantly, the trial court informed the jury that "you cannot take into account any amount of heroin that the Defendant had in his possession outside of North Carolina." Thus, the jury was specifically instructed not to consider any of White's alleged criminal acts that took place outside of this State.

Further, the only crimes for which White was being charged indisputably took place in North Carolina. The State's primary evidence against White was Johnson's testimony to the effect that he saw White cut, bag, and sell heroin *in North Carolina*. The State referred to White's possession of drugs in New York not as a means of trying him for that crime, but rather to corroborate Johnson's testimony.

Additionally, we note that White improperly relied on *State v. Bright*, 131 N.C. App. 57, 505 S.E.2d 317 (1998) and *State v. Batdorf*, 293 N.C. 486, 238 S.E.2d 497 (1977) to support his argument. In those cases, the respective courts held that a jury instruction regarding jurisdiction was warranted because it was unclear whether the crime was committed in this State. For example, in *Bright* the defendant was charged with rape and other sex offenses and the question was whether those unlawful acts took place in this State. Similarly, in *Batdorf* the defendant was charged with murder and it was unclear whether the murder itself was committed in North Carolina. In the instant case, however, it is undisputed that heroin trafficking took place in North Carolina; rather, the sole question is whether White was the perpetrator of that crime. Therefore, *Bright and Batdorf* are distinguishable.

Indeed, this case is more analogous to *State v. Callahan*, 77 N.C. App. 164, 334 S.E.2d 424 (1985), where the defendant was charged with certain drug offenses and the question was not whether the particular drug sale took place in North Carolina, but whether the defendant, an undisputed drug dealer in South Carolina, was the perpetrator of the North Carolina drug offense. That is, unlike *Bright and Batdorf*, the question was not whether the crime itself took place in North Carolina, but whether the defendant was the perpetrator of that crime in this State. In *Callahan*, we ruled that in that circumstance, an instruction on jurisdiction was properly denied. We see no reason to depart from the precedent of that case.

In sum, we find that the State sought to prosecute White for a crime that took place in this State. This case does not involve a situation whereby a crime occurred that might not have taken place in North Carolina. The trafficking at issue in the case *sub judice* undoubtedly occurred here; the only issue was whether White committed that offense. Any reference to White's alleged criminal activity outside of this State was not used as a substantive part of the State's evidence. Since North Carolina was the only location where the crime White was charged with could take place, White's first assignment of error is without merit.

White's next two assignments of error involve contentions that the trial court improperly denied his motion to dismiss and improperly allowed evidence concerning his arrest in New York. We hold that these assignments of error are wholly without merit and teeter on the edge of being frivolous. Accordingly, we summarily reject them.

STATE v. WHITE

[134 N.C. App. 338 (1999)]

**[2]** Lastly, White contends that the State's prosecution for the substantive offenses of trafficking more than 28 grams of heroin by sale, delivery, manufacture, transportation or possession violated both N.C. Gen. Stat. § 90-97 and the Double Jeopardy Clause of the United States and North Carolina Constitutions. Specifically, White contends that the acts for which he was prosecuted in North Carolina were "the same acts" for which he was previously prosecuted and convicted in federal court. White concedes that he failed to raise this issue at the trial court level and accordingly first sets forth this alleged error on appeal.

"The constitutional right not to be placed in jeopardy twice for the same offense, like other constitutional rights, may be waived." *State v. Hopkins*, 279 N.C. 473, 475, 183 S.E.2d 657, 659 (1971). To avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court. *See State v. McKenzie*, 292 N.C. 170, 175, 232 S.E.2d 424, 428 (1977). Failure to raise this issue at the trial court level precludes reliance on the defense on appeal. *Id.* Simply put, "double jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court." *Id.* at 176, 232 S.E.2d at 428.

In the case *sub judice*, White failed to bring his double jeopardy defense to the attention of the trial court. Therefore, he has waived his right to this defense and we refuse to address it on appeal.

No error.

Judge GREENE concurs.

Judge MARTIN concurs in the result.